**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**CHAMBERS OF**
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

**MARTIN LUTHER KING COURTHOUSE**
**50 WALNUT ST. ROOM 4066**
**NEWARK, NJ 07101**
**973-297-4903**

January 31, 2024

VIA ECF

**LETTER ORDER**

**Re: In Re: American Financial Resources, Inc. Data Breach Litigation**
**Civil Action No. 22-1757**

Dear Litigants:

Before the Court is Defendant American Financial Resources, Inc.'s ("Defendant") Motion to Partially Dismiss Plaintiffs' Dora Micah ("Micah"), Sharon Styles ("Styles"), Matthew Stuart ("Stuart"), and Anthony A. Oliva, PhD ("Dr. Oliva") (together, individually and on behalf of all those similarly situated, "Plaintiffs") First Amended Consolidated Class Action Complaint (the "FAC"), ECF No. 46, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Motion"). ECF No. 50. Plaintiffs oppose the Motion. ECF No. 53. For the reasons explained below, the Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND[1]

Defendant is an entity that provides real-estate lending services. FAC ¶¶ 38–39. In connection with its business, Defendant collected sensitive personal and financial information ("PII") from its customers. Id. ¶¶ 38–44. In December 2021, a cyber-security attack against Defendant occurred, resulting in a data breach of its customers' PII (the "Data Breach"). Id. ¶¶ 15, 52. Plaintiffs and Class Members, who are current and former customers of Defendant, had their PII compromised due to the Data Breach. Id. ¶¶ 30–33, 50. Such information included their full names, Social Security numbers, and in some instances, driver's license information. Id.; Ex. 1, ECF No. 46.1 (notice letter from Defendant to Plaintiff Stuart).

Plaintiffs filed their Consolidated Class Action Complaint on July 8, 2022.[2] Plaintiffs asserted multiple counts against Defendant under New Jersey law, including violations of New Jersey's Consumer Fraud Act (the "NJCFA"), N.J.S.A. § 56:8-2, (the "NJCFA Claim"), as well as

[1] The Court discussed the background of this action in its March 29, 2023, Order, ECF No. 52 (the "March Order"). The Court therefore discusses only those facts relevant to resolve the instant Motion.

[2] On March 29, 2022, Plaintiff Micah filed an individual suit. ECF No. 1. After three additional lawsuits were filed, the parties entered a Stipulation and Order consolidating the four matters. ECF No. 13.

respective state law claims,[3] including Plaintiff Micah's claim under the Maryland Consumer Protection Act (the "MCPA"), Md. Comm. L. Code § 13-301, et seq., (the "MCPA Claim"), and Plaintiff Stuart's claim under the Illinois Consumer Fraud And Deceptive Business Practices Act (the "ICFA"), 815 Ill. Comp. Stat. § 505/1, et seq. (the "ICFA Claim"). ECF No. 20.

Defendant moved to dismiss Plaintiffs' Consolidated Class Action Complaint, which the Court granted in part and denied in part on March 29, 2023. See March Order. The Court found, among other things, the following:

(1) Plaintiff Stuart did not establish actual injury "as he has neither alleged that he has been the victim of identity theft, nor that he has been notified of his information being published on the dark web." Id. at 5. Accordingly, the Court dismissed Plaintiff Stuart's claims without prejudice. Id. at 6.

(2) Plaintiffs' allegations regarding the NJCFA Claim were too broad to permit the Court to find a misrepresentation or omission by Defendant, particularly given the heightened pleading standard. Id. at 11. Accordingly, the Court dismissed Plaintiffs' NJCFA Claim without prejudice. Id.

(3) Plaintiff Micah's MCPA claim was not alleged with sufficient particularity, only conclusory statements that failed to provide the "time, place, and contents of the false representations." Id. at 12. Accordingly, the Court dismissed Plaintiff Micah's MCPA Claim without prejudice. Id.

(4) Because the Court dismissed Plaintiff Stuart's claims for lack of standing, it did not address Plaintiff Stuart's ICFA Claim. Id. at 10 n.16.

On April 28, 2023, Plaintiffs filed the FAC. In the FAC, Plaintiffs reiterate the main allegations from their previous complaint and add the following allegations:

(1) Plaintiff Stuart's PII was published for sale on at least four chat groups on the Dark Web following the Data Breach—and remains on sale today. FAC ¶ 146.

(2) Defendant's conduct was unconscionable under the NJCFA "in its failure to maintain adequate data security and to safeguard their PII." Id. ¶¶ 253–74.

(3) According to Plaintiff Micah, Defendant violated the MCPA with its "unfair practices," causing substantial injury that a consumer could not reasonably avoid. Id. ¶¶ 275–89.

(4) According to Plaintiff Stuart, Defendant's conduct was "unfair" under the ICFA in that it violated public policy, oppressed customers, and caused substantial injury. Id. ¶¶ 290–306.

[3] Plaintiffs' respective state law claims are based on each Plaintiff's home state's consumer statutes. Plaintiffs also allege alternative classes for these claims. See generally Compl.

## II. LEGAL STANDARD

### 1. Motion to Dismiss Under Rule 12(b)(1)

A motion to dismiss for lack of standing is properly brought pursuant to Rule 12(b)(1). See Bellentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007). Under Rule 12(b)(1), a plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In resolving a Rule 12(b)(1) motion, a court first determines whether the motion presents a "facial" or "factual" attack. See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," id. at 358, and "does not dispute the facts alleged in the complaint," Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A court reviewing a facial attack must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Constitution Party of Pa., 757 F.3d at 358. Here, Defendant's motions to dismiss for lack of standing present a facial attack because it challenges Plaintiff Stuart's standing to bring this lawsuit according to the pleaded facts. The Court thus accepts the pleaded facts as they relate to Plaintiff Stuart's standing as true and draws all reasonable inferences in Plaintiffs' favor. See Constitution Party of Pa., 757 F.3d at 358.

### 2. Motion to Dismiss Under Rule 12(b)(6)

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

Pursuant to Rule 12(b)(1), Defendant seeks to dismiss Plaintiff Stuart's claims due to lack of standing. Pursuant to Rule (12)(b)(6), Defendant seeks to dismiss Plaintiffs' NJCFA Claim, Plaintiff Micah's MCPA Claim, and Plaintiff Stuart's ICFA Claim (if the Court finds that Plaintiff Stuart has standing). The Court will address each in turn.

### 1. Standing with respect to Plaintiff Stuart

Defendant argues that Plaintiff Stuart has not properly alleged standing because he claims his PII is "for sale" on the Dark Web versus actually sold and, nonetheless, such allegation is not sufficiently connected to the Data Breach. See Mot., ECF No. 50.1. at 6–7. The Court disagrees.

To establish standing, a plaintiff must allege three elements: (1) a "concrete and particularized" injury-in-fact; (2) a "causal connection between the injury and the conduct complained of"; and (3) "a likelihood that the injury will be redressed by a favorable decision."

In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 633 (3d Cir. 2017) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).

Plaintiff Stuart meets the first element of standing by properly alleging an injury-in-fact. The alleged injury must be "distinct and palpable" rather than "merely abstract," Reilly v. Cerdian Corp., 664 F.3d 38 (3rd Cir. 2011), and particularized in that it "affect[s] the plaintiff in a personal and individual way." Lujan, 504 U.S. at 561 n.1. In the data-breach context, a plaintiff can establish actual injury through allegations tending to show that their "individual information has actually been accessed, disseminated, or misused by an unauthorized party." In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig., No. 19-2904, 2021 WL 5937742, at *7 (D.N.J. Dec. 16, 2021) ("AMCA"). Here, Plaintiff Stuart pleads that his PII was published on the Dark Web, which corroborates that his individual information was indeed accessed. Id. at *9; FAC ¶ 146; see also March Order at 4–5. Therefore, Plaintiff Stuart sufficiently pleads an actual injury.

Plaintiff Stuart also satisfies the second element of standing—causal connection. For purposes of standing, causation requires a plaintiff to establish that the alleged injury "is fairly traceable to the challenged conduct of the defendant." Mielo v. Steak 'N Shake Operations, Inc., 897 F.3d 467, 480–81 (3d Cir. 2018) (quoting Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016)). As with the other Plaintiffs, Plaintiff Stuart's allegation that his PII was published on the Dark Web following the Data Breach is sufficiently traceable to the conduct at issue. Plaintiff Stuart is not required at this stage to, as Defendant suggests, specify when the information was published on the Dark Web. See Mot. at 6–7; see also In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig., No. 19-2904, 2023 WL 6216542, at *3 n. 8 (D.N.J. Sept. 21, 2023).

Accordingly, Plaintiff Stuart has standing in this action.

### 2. Plaintiffs' NJCFA Claim

Defendant argues that Plaintiffs' NJCFA Claim cannot survive based on allegations of unconscionability. Mot. at 10–13. The Court agrees.

The NJCFA prohibits, among other things, "[t]he act, use or employment by any person of any unconscionable commercial practice . . . whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A. § 56:8-2. As stated in the Court's March Order, a plaintiff bringing a claim under the NJCFA must allege "(1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." Int'l Union of Operating Engineers Loc. No. 68 Welfare Fund, 192 N.J. 372, 389 (2007) (quotation marks omitted). "The NJCFA creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations." 46 Arcand v. Brother Int'l Corp., 673 F. Supp. 2d 282, 296 (D.N.J. 2009) (quotation omitted).

Under the category of "affirmative acts," Plaintiffs now claim that Defendant violated the NJCFA with unconscionable commercial practices.[4] FAC ¶¶ 253–74. The term "unconscionable"

[4] While an NJCFA claim may be subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), see March Order at 10 n.17, an NJCFA claim based on "unconscionable commercial practices" is subject only

implies a "lack of good faith, honesty in fact and observance of fair dealing." Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994) (quotation marks and citations omitted). Importantly, unconscionability under the NJCFA is distinct from a breach of warranty or breach of contract. See id.; see also Galgano v. T.D. Bank, N.A., No. 20-05623, 2021 WL 2472331, at *5 (D.N.J. June 17, 2021) ("[A] plaintiff may not merely repurpose a breach of contract claim into an 'unconscionable commercial practice' claim under the NJCFA.").

As a threshold issue, the parties dispute whether unconscionability under the NJCFA requires a showing that Defendant deceived or misled Plaintiffs in some way. See Mot. at 11; Opp'n at 7–8. Defendant argues that, based on the Third Circuit's opinion in Ciser, the statute "requires some element of deceptive conduct, explicit or implicit, to be actionable as an unconscionable practice." 596 Fed. Appx. at 162. Plaintiffs contend that, based on James—in which the court deviated from the Third Circuit's interpretation in Ciser—"liability for unconscionable business practices under N.J.S.A. § 56:8-2 does not always require that a plaintiff show deception." James v. Global Tel*Link Corp., No. 13-4989, 2018 WL 3736478, at *6–8 (D.N.J. Aug. 6, 2018).

The Court need not resolve this tension because, even without the requirement of deceptive conduct, Plaintiffs' allegations nevertheless fail to state a claim. First, Plaintiffs allege that they had "no choice" in providing their PII to Defendant, nor could they oversee Defendant's protection of their PII. FAC ¶¶ 263–65. Second, Plaintiffs allege that Defendant "lulled Plaintiffs and Class Members into a false sense of security" by ensuring protection of their PII. Id. ¶¶ 266–67. Third, Plaintiffs allege that Defendant continued to store their PII when it had no legitimate business need to do so and knew or should have known about potential security vulnerabilities. Id. ¶ 268. Finally, Plaintiffs allege that Defendant's data protection practices are "contrary to public policy" and do not comply with Federal Trade Commission ("FTC") rules and regulations. Id. ¶ 269.[5]

These allegations do not plausibly suggest a lack of good faith, honesty in fact, or observance of fair dealing. See Cox, 647 A.2d at 462. Put differently, Plaintiffs fail to allege an "affirmative act" that would be an unconscionable business practice. Unlike the defendants in James, who imposed excessive rates to consumers through commissions and ancillary fees, 2018 WL 3736478 at *7, here Defendant did not "oppress" or "exploit" Plaintiffs with its policies, see Kugler v. Romain, 58 N.J. 522, 538, 544 (1971). To the extent Plaintiffs complain about Defendant's handling of their PII, that is more aptly captured in their negligence claims, which the Court allowed to proceed. See March Order at 7–8. Therefore, Plaintiffs' NJCFA Claim is dismissed.

---

to the baseline requirements under Federal Rule of Civil Procedure 8. See Katz v. Live Nation, Inc., No. 09-3740, 2010 WL 2539686, at *5 (D.N.J. June 17, 2010) ("Unconscionable commercial practice claims are distinct from NJCFA claims sounding in fraud, and so the heightened pleading standard of Rule 9(b) does not apply."); see also Ciser v. Nestle Waters North Am., Inc., 596 Fed. Appx. 157, 162 n.6 (3d Cir. 2015).

[5] While Plaintiffs argue that Defendant violated FTC regulations and thus offended public policy, Opp'n at 11, the FAC does not allege which FTC guidelines Defendant allegedly violated. Plaintiffs' references to Section 5 of the FTC Act are unhelpful, FAC ¶¶ 80–86, as the statute simply prohibits "unfair practices." 15 U.S. Code § 45.

### 3. Plaintiff Micah's MCPA Claim

Defendant argues that Plaintiff Micah's MCPA Claim should be dismissed because (1) the allegations are not connected to Maryland and (2) Plaintiff Micah fails to sufficiently allege "unfair practices." Mot. at 14–17. The Court agrees.

As an initial matter, the Court is unconvinced that Plaintiff Micah can bring a claim under the MCPA because she has not sufficiently connected any activity alleged in the FAC to Maryland. In Maryland, "unless an intent to the contrary is expressly stated, acts of the legislature will be presumed not to have any extraterritorial effect." Thomas v. Kimpton Hotel & Rest. Grp., LLC, No. 19-01860, 2020 WL 3544984, at *8 (N.D. Cal. June 30, 2020) (citing Chairman v. Waldron, 285 Md. 175, 183-84 (1979)). Specifically, the MCPA does not apply to sales practices that occur entirely in other states. See Elyazidi v. Suntrust Bank, 780 F.3d 227, 237 (4th Cir. 2015). Rather, a plaintiff must allege that "some significant portion of the challenged activity occurred" in Maryland. See id.; see also Payne v. Ford Motor Credit Co., LLC, No. 20-00034, 2020 WL 5250287, at *5 (D. Md. Sept. 3, 2020). Here, the only relevant fact Plaintiff Micah pleads is that she resides in Maryland. FAC ¶ 30. That allegation alone cannot support an MCPA claim.

Notwithstanding the issue of extraterritorial reach, Plaintiff Micah fails to plead the elements of an MCPA claim. The MCPA protects against "any unfair, abusive, or deceptive trade practice." Md. Com. Law § 13-303. To bring an MCPA claim, a plaintiff must establish that: "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." Palermino v. Ocwen Loan Servicing, LLC, 2015 WL 6531003, at *2 (D. Md. Oct. 26, 2015) (citation omitted).[6] For a consumer injury to be unfair, the injury must be "substantial, it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces, and it must be an injury that consumers themselves could not have reasonably avoided." Legg v. Castruccio, 642 A.2d 906, 916 (Md. Ct. Spec. App. 1994) (alteration in original).

Similar to Plaintiffs' NJCFA allegations, Plaintiff Micah pleads that Defendant's practices were "unfair" because it failed to safeguard Plaintiff Micah's PII, failed to comply with applicable laws and industry standards pertaining to data security, and gave consumers "no choice" but to share their PII with Defendant. See FAC ¶¶ 275–89; see also Opp'n at 13. Other than citing cases involving the FTC Act,[7] FAC ¶¶ 286–87, Plaintiff Micah offers no authority to explain how

[6] An MCPA claim "sound in fraud" is subject to Rule 9(b)'s heightened pleading standard. Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 781 (4th Cir. 2013). Here, because Plaintiffs now assert "unfair practices" rather than fraudulent conduct, the Court will not apply the Rule 9(b) heightened pleading standard and require only plausibility under Rule 8. See AMCA, 2021 WL 5937742, at *21 ("Rule 9(b) applies to a consumer protection claim only to the extent it asserts fraudulent conduct by the defendant . . . while Rule 8 applies to the extent Plaintiffs allege other deceptive or unfair conduct.").

[7] Plaintiff Micah cites these cases because both Section 5 of the FTC Act and the MCPA prohibit "unfair practices," See 15 U.S.C. §45, and Maryland courts look to the FTC Act in assessing "unfairness" under the MCPA, see Legg, 642 A.2d at 917 (adopting the 1980 refinements to the FTC's test for unfair trade practices as the appropriate test for the MCPA). While such enforcement actions suggest that inadequate data security may be considered "unfair" under the FTC Act, they do not explain why Defendant's conduct is allegedly unfair here.

Defendant's alleged conduct amounts to the "unfairness" prohibited by the MCPA. Accordingly, Plaintiff Micah's MCPA claim is dismissed.

**4. Plaintiff Stuart's ICFA Claim**

Similarly, Defendant argues that Plaintiff Stuart's ICFA Claim should be dismissed because (1) there is insufficient connection to Illinois and (2) it is improperly pled. Mot. at 18–22. The Court agrees.

First, Plaintiff Stuart does not properly connect the alleged facts to Illinois. The ICFA "does not have extraterritorial effect" and applies only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." Avery v. State Farm Mut. Auto Ins. Co., 835 N.E.2d 801, 853–54 (Ill. 2005).[8] Plaintiff Stuart argues that, because he suffered harm in Illinois, the ICFA applies. Opp'n at 15. Plaintiff Stuart states that while residing in Illinois, he gave his PII to Defendant and paid Defendant for its services. Id. However, the FAC does not contain such details. The only allegation relating to Illinois is that Plaintiff Stuart currently lives there. FAC ¶ 32. Plaintiff does provide an exhibit, ECF No. 46.1, showing that he lived in Illinois when Defendant notified him about the Data Breach. But without more, the Court is not satisfied that the circumstances at issue occurred primarily and substantially in Illinois.

Even if Plaintiff Stuart did sufficiently allege a connection to Illinois, his allegations cannot support an ICFA claim. The ICFA protects consumers against "unfair or deceptive acts." 815 Ill. Comp. Stat. § 505/1, et seq. To bring a claim pursuant to the ICFA, a plaintiff must allege that (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, and (4) the consumer fraud proximately caused plaintiff's injury. Connick v. Suzuki Motor Co., 675 N.E.2d 584, 593 (Ill. 1996). To determine whether conduct is "unfair" under the ICFA, courts consider whether the defendant's conduct "offends public policy," is "immoral, unethical, oppressive, or unscrupulous," or "causes consumers substantial injury." See Batson v. Live Nation Entm't, Inc., 746 F.3d 827, 830 (7th Cir. 2014); Robinson v. Toyota Motor Credit Corp., 775 N.E.2d 951, 961 (Ill. 2002).[9] Substantial injury is defined with the same criteria as the MCPA—namely, that it is "substantial, not outweighed by any countervailing benefits to consumers or competition," and that "consumers . . . could not reasonably have avoided [the injury]." Siegel v. Shell Oil Co., 612 F.3d 932, 935 (7th Cir. 2010) (alteration in original).

Plaintiff Stuart fails to allege that Defendant engaged in "unfair practices" such that it violated public policy, oppressed consumers, or caused substantial injury. As with Plaintiffs' NJCFA allegations and Plaintiff Micah's MCPA allegations, see supra III.2 and III.3, Plaintiff Stuart alleges that Defendant mishandled consumers' PII, failed to comply with applicable laws

---

[8] Plaintiff Stuart is correct that "at issue in Avery was whether the ICFA applies to nonresident plaintiffs, 835 N.E.2d at 854, which is not at issue here." Opp'n at 15. However, "while Avery set out a nexus test for non-resident plaintiffs, the law is nevertheless clear that even an Illinois resident must show that the disputed transaction occurred 'primarily and substantially in Illinois.'" Archey v. Osmose Utilities Services, Inc., No. 20-05247, 2022 WL 3543469, at *5 (N.D. Ill. Aug. 18, 2022).

[9] A plaintiff need not meet all three factors. A practice may be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Robinson, 775 N.E.2d at 961.

and industry standards, and gave consumers no choice but to follow Defendant's data security policies. FAC ¶¶ 290–306. Again, the FAC does not identify the FTC guidelines that Defendant allegedly violated in offense to public policy, see Section III.2, n.5, nor plausibly explain how Defendant's policies "oppressed" consumers, see Section III.2.[10] Finally, the Court does not find that an "imminent risk of identity theft"—as opposed to significant consequences traceable to the Data Breach—is an injury substantial enough to constitute unfairness. Id. ¶ 298; see also Ekl v. Knecht, 223 Ill. App. 3d 234, 242 (1991) (finding that the plaintiff suffered a substantial injury because she was "forced to pay an unreasonable amount" to a plumber who used threatening tactics to collect his fees). Accordingly, Plaintiff Stuart's ICFA claim is dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, ECF No. 50, is **GRANTED** in part and **DENIED** in part.

Plaintiffs' NJCFA Claim (Count V), Plaintiff Micah's MCPA Claim (Count VI), and Plaintiff Stuart's ICFA Claim (Count VII) are **DISMISSED**.

**SO ORDERED.**

***/s Madeline Cox Arleo***
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

[10] The cases Plaintiff cited in its Opposition, Opp'n at 21, involve more egregious conduct than at issue here. See Bartnett v. Abbott Lab'ys, 492 F. Supp. 3d 787, 792 (N.D. Ill. 2020) (defendant failed to ask an imposter any security questions, enabling the imposter to steal funds from the plaintiff's account); Worix v. MedAssets, Inc., 857 F. Supp. 2d 699, 700 (N.D. Ill. 2012) (person stole a computer hard drive, neither encrypted nor password protected, from an employee of the defendant).