UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| IN RE AMERICAN FINANCIAL RESOURCES, INC. DATA BREACH LITIGATION | Civil Action No. 22-1757 (MCA) (JSA) |
| --- | --- |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

James E. Cecchi
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

*Plaintiffs' Interim Co-Lead Class Counsel*

Stuart A. Davidson
Lindsey H. Taylor
Alexander C. Cohen
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
(561) 750-3000

*Plaintiffs' Interim Co-Lead Class Counsel*

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 2

A. History of Litigation ..... 2

B. Summary of Settlement Terms ..... 3

C. Scope of the Release ..... 5

D. The Notice and Administration Plans ..... 5

E. Attorneys' Fees and Expenses ..... 6

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 8

A. Preliminary Approval of Settlement Is Appropriate ..... 8

1. Plaintiffs and Plaintiffs' Interim Class Counsel Have Adequately Represented the Settlement Class ..... 9

2. The Proposed Settlement Was Negotiated at Arm's Length ..... 10

3. The Relief Provided for the Settlement Class Is Adequate Taking into Account the Costs, Risks, and Delay of Trial and Appeal ..... 11

4. The Other Rule 23(e)(2)(C) Factors Are Met ..... 14

a. The Proposed Method for Distributing Relief Is Effective ..... 14

b. Attorneys' Fees and Expenses ..... 15

c. The Parties Have No Other Substantive Agreements ..... 15

5. Settlement Class Members Are Treated Equitably ..... 15

B. The Proposed Notice Program Satisfies Rule 23 and Due Process Should Be Approved ..... 16

C. Certification of the Settlement Class Is Appropriate ..... 17

**Page**


1. Numerosity ..... 18
2. Commonality ..... 18
3. Typicality ..... 19
4. Adequacy of Representation ..... 20
5. Certification Under Rule 23(b)(3) Is Appropriate ..... 20
   a. Common Questions of Law and Fact Predominate ..... 21
   b. Settlement Class Treatment Is Superior ..... 22
6. The Settlement Class Members Are Ascertainable ..... 23
   a. The Settlement Class Is Defined with Reference to Objective Criteria ..... 24
   b. There Is a Reliable and Administratively Feasible Mechanism for Determining Settlement Class Membership ..... 25
7. Proposed Co-Lead Counsel Satisfy Rule 23(g) ..... 26

D. The Court Should Approve a Schedule Leading Up to the Final Approval Hearing ..... 27

V. CONCLUSION ..... 28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Agnone v. Camden Cnty., Ga.*,
2019 WL 1368634 (S.D. Ga. Mar. 26, 2019) ....................17

*Allen v. Ollie's Bargain Outlet, Inc.*,
37 F.4th 890 (3d Cir. 2022) ....................18

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)....................17, 21, 22, 23

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)....................20

*Arbitrage Fund v. Toronto-Dominion Bank*,
2023 WL 5550198 (D.N.J. Aug. 29, 2023) ....................19

*Beneli v. BCA Fin. Servs., Inc.*,
324 F.R.D. 89 (D.N.J. 2018)....................13

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745 (D.N.J. Apr. 8, 2011) ....................11

*Byrd v. Aaron's, Inc.*,
784 F.3d 154 (3d Cir. 2015)....................23, 24, 25, 26

*C.P. v. N.J. Dep't of Educ.*,
2022 WL 3572815 (D.N.J. Aug. 19, 2022) ....................18

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013)....................23, 24, 25

*Chiang v. Veneman*,
385 F.3d 256 (3d Cir. 2004)....................18, 24

*City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*,
867 F.3d 434 (3d Cir. 2017)....................24, 26

*Curiale v. Lenox Grp., Inc.*,
2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ....................6

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)....................6



4881-2586-8211.v1

**Page**

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)....................16

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975).................... *passim*

*Hargrove v. Sleepy's LLC*,
974 F.3d 467 (3d Cir. 2020)....................26

*In re AT&T Corp. Sec. Litig.*,
2005 WL 6716404 (D.N.J. Apr. 25, 2005) ....................10

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007) ....................13

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)....................13

*In re CIGNA Corp.*,
2007 WL 2071898 (E.D. Pa. July 13, 2007)....................7

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)....................13

*In re Ins. Brokerage Antitrust Litig.*,
282 F.R.D. 92 (D.N.J. 2012)....................8

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
341 F.R.D. 128 (D. Md. 2022), *rev'd on other grounds*,
*In re Marriott Int'l, Inc.*,
78 F.4th 677 (4th Cir. 2023) ....................22

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)....................13, 22

*In re Schering-Plough/Merck Merger Litig.*,
2010 WL 1257722 (D.N.J. Mar. 26, 2010)....................8

*In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*,
967 F.3d 264 (3d Cir. 2020)....................20

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
325 F.R.D. 136 (D.S.C. 2018) ....................22

**Page**

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) ....................13

*In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*,
2023 WL 1818922 (D.N.J. Feb. 8, 2023) ....................19

*In re Vivopharma Inc. Sec. Litig.*,
2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ....................9

*In re Warfarin Sodium Antitrust Litig.*,
212 F.R.D. 231 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004) ....................14

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ....................6, 14

*Jones v. Com. Bancorp, Inc.*,
2007 WL 2085357 (D.N.J. July 16, 2007) ....................7

*Kelly v. RealPage Inc.*,
47 F.4th 202 (3d Cir. 2022) ....................26

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*,
2019 WL 4877563 (D.N.J. Oct. 3, 2019) ....................10

*Marcus v. BMW of N. Am., LLC*,
687 F.3d 583 (3d Cir. 2012) ....................23, 24

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) ....................16

*Pollak v. Portfolio Recovery Assocs., LLC*,
285 F. Supp. 3d 812 (D.N.J. 2018) ....................24

*Pro v. Hertz Equip. Rental Corp.*,
2013 WL 3167736 (D.N.J. June 20, 2013) ....................13

*Rodriguez v. Nat'l City Bank*,
726 F.3d 372 (3d Cir. 2013) ....................19

*Sanders v. CJS Sols. Grp., LLC*,
2018 WL 1116017 (S.D.N.Y. Feb. 28, 2018) ....................11

*Schwartz v. Urb. Outfitters, Inc.*,
2016 WL 7626720 (E.D. Pa. Oct. 31, 2016) ....................10

**Page**

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001)....................18

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011)....................20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................18

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995)....................13

*Woodward v. NOR–AM Chem. Co.*,
1996 WL 1063670 (S.D. Ala. May 23, 1996) ....................12

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23 ....................1, 17, 23, 26
Rule 23(a)....................17, 20
Rule 23(a)(1) ....................18
Rule 23(a)(2) ....................18
Rule 23(a)(3) ....................19
Rule 23(a)(4) ....................20, 26
Rule 23(b) ....................17
Rule 23(b)(3)....................*passim*
Rule 23(c)(2)(A) ....................17
Rule 23(c)(2)(B)....................16, 17
Rule 23(e)....................6, 7, 16
Rule 23(e)(1)(B)....................7, 16
Rule 23(e)(2) ....................1, 7, 8, 27
Rule 23(e)(2)(A) ....................8, 9
Rule 23(e)(2)(B)....................8, 10
Rule 23(e)(2)(C)....................14
Rule 23(e)(2)(C)(i)....................11, 12
Rule 23(e)(2)(C)(ii)....................14
Rule 23(e)(2)(C)(iii).................... 14-15
Rule 23(e)(2)(C)(iv).................... 14-15
Rule 23(e)(2)(D) ....................15
Rule 23(e)(3) ....................8
Rule 23(g) ....................26, 27
Rule 23(g)(1)(A) ....................26
Rule 23(h)(1)....................16

**Page**

**SECONDARY AUTHORITIES**

5 James W. Moore, *et al.*,
*Moore's Federal Practice* (3d ed. 1997) ....................23

5 James W. Moore, *et al.*,
*Moore's Federal Practice* 23.21[3][d] (3d ed. 2013) ....................23

*Manual for Complex Litigation*
§21.222 (4th ed. 2004) ....................23, 24

*Manual for Complex Litigation*
§21.63 (4th ed. 2004) ....................7

Plaintiffs, individually and on behalf of the proposed Settlement Class ("Settlement Class Members" or "Settlement Class"), respectfully move under Rule 23 of the Federal Rules of Civil Procedure for preliminary approval of class action settlement and preliminary certification of the Settlement Class ("Motion"). The Class Action Settlement Agreement and Release ("Settlement Agreement") is filed herewith as Exhibit 1. The Declaration of James E. Cecchi in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Cecchi Decl.") is included as Exhibit 2. The Declaration of Cameron R. Azari, Esq. Regarding Notice Program ("Azari Decl.") is included as Exhibit 3. Unless otherwise stated, all definitions are the same as in the Settlement Agreement.

## I. INTRODUCTION

Plaintiffs and the proposed Settlement Class they seek to represent have reached a nationwide class action settlement with Defendant, American Financial Resources, Inc. ("Defendant" or "AFR"), for a $2,500,000 non-reversionary common fund, and up to an additional $1,000,000 for the payment of claims based on out-of-pocket losses, to resolve all claims arising from the cybersecurity incident that took place in or around December 2021, and announced by AFR in or around March 2022, which potentially impacted approximately 216,645 of AFR's current and former customers and employees (the "Incident"). *See* Cecchi Decl., ¶3. The settlement also provides a credit monitoring benefit to Settlement Class Members who elect that benefit, which includes one year of credit monitoring with up to $1 million in identity theft insurance. Finally, the settlement requires AFR to remove Personally Identifiable Information ("PII") of any Settlement Class Member from its system to the extent allowable under all applicable state and federal laws or regulations.

The settlement provides significant relief to Settlement Class Members and satisfies each of the factors under Rule 23(e)(2), *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), and the other

applicable requirements. Accordingly, the Court should preliminarily approve the settlement, direct notice to all Settlement Class Members in the reasonable manner outlined below, set deadlines for exclusions, objections, and briefing on Plaintiffs' motion for final approval and application for an award of attorneys' fees and expenses, and set a date for the Final Fairness Hearing.

## II. BACKGROUND

### A. History of Litigation

The first case stemming from the Incident was filed on March 29, 2022. Soon after, other plaintiffs filed other, related class action lawsuits, which the Court consolidated.

On July 8, 2022, Plaintiffs filed their Consolidated Class Action Complaint, asserting claims for negligence, negligence *per se*, unjust enrichment, breach of confidence, invasion of privacy (intrusion upon selection), breach of implied contract, and violations of the New Jersey Consumer Fraud Act ("NJCFA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Maryland Consumer Protection Act ("MCPA"), the Maryland Personal Information Protection Act ("MPIPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). ECF 20. On August 22, 2022, AFR filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF 29), which the Court granted in part and denied in part on March 29, 2023. ECF 40.

On April 28, 2023, Plaintiffs filed the operative First Amended Consolidated Class Action Complaint (the "Complaint"). ECF 46. AFR filed a motion for partial dismissal of the Complaint under Rules 12(b)(1) and 12(b)(6) (ECF 50), and on January 31, 2024, the Court issued a Letter Order denying AFR's motion to dismiss under Rule 12(b)(1) and granting AFR's motion to dismiss under Rule 12(b)(6) as to Plaintiffs' MCPA, ICFA, and NJCFA claims. *See* ECF 64.

Discovery, including rolling document productions from both Parties over several months, occurred from June 2023 to February 2024, and both Defendant and Plaintiffs conducted searches for and collections of electronically stored information. Additionally, Plaintiffs served numerous subpoenas for documents on third parties who contracted with AFR in connection with their information security and the Incident, and documents from those entities have been produced to both Parties.

The Parties engaged in mediation early on February 15, 2023, with the Honorable Faith S. Hochberg (ret.). While the Parties were unable to reach agreement during this first mediation, they engaged in a second mediation on February 16, 2024, with the Honorable Diane Welsh (ret.) and were able to reach an agreement in principle on the settlement of this matter.

The Parties have agreed to settle the Litigation on the terms and conditions set forth in the Settlement Agreement in recognition that the outcome of the Litigation is uncertain and that achieving a final result through litigation would require substantial additional risk, uncertainty, discovery, time, and expense for both of the Parties.

### B. Summary of Settlement Terms

The Settlement Class is defined as "all persons whose [PII] was maintained on AFR's system that was allegedly accessed during the Incident in December 2021, and who were sent a notice of the Incident in or around March 2022." The Settlement Class specifically excludes: (i) AFR and its respective officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge and/or Magistrate assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Incident or who pleads *nolo contender* to any such charge. Settlement Agreement, ¶1.30.

AFR has agreed to create a non-reversionary common fund ("Common Fund") in the amount of $2,500,000 to pay Common Fund Benefit Claims to all Settlement Class Members who were notified of the Incident and file a Valid Claim. *Id.*, ¶1.8. From the $2,500,000 Common Fund, all Settlement Class Members will be able to submit a Claim for an automatic *pro rata* payment. The Common Fund will also be responsible for the payment of all attorneys' fees, expenses, and charges awarded to Plaintiffs' counsel and any service awards to Plaintiffs.

AFR has also agreed to create an Out-of-Pocket Loss Benefit in which Settlement Class Members have the opportunity to submit Claims for documented, unreimbursed, Out-of-Pocket Losses that are fairly traceable to the Incident. The Out-of-Pocket Loss Benefit shall provide up to a maximum of $7,500 per person and is subject to an aggregate cap of $1,000,000.

Out-of-Pocket Losses include, for example, and without limitation, unreimbursed losses related to the following: (i) costs, expenses, losses, or charges incurred as a result of identity theft or identity fraud or other misuse of a Settlement Class Member's PII after December 20, 2021; (ii) costs incurred on or after December 20, 2021, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (iii) miscellaneous expenses such as notary, postage, copying, mileage, and other charges; and (iv) charges for credit monitoring or other mitigative expenditures incurred on or after December 20, 2021, through March 1, 2024. Settlement Class Members with Out-of-Pocket Losses must submit documentation and attestation supporting their Claims. This may include receipts or other documentation, not "self-prepared" by the claimant, that document the costs incurred. "Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity or support to other submitted documentation. Out-of-Pocket Losses must include an attestation that the monetary

losses are fairly traceable to the Incident and were not incurred due to some other event or reason. Settlement Agreement, ¶2.2(b).

AFR will also make available a Credit Monitoring Benefit on a claims-made basis. This benefit allows Settlement Class Members to enroll in one year of one credit bureau monitoring with up to $1 million in identity theft insurance. Settlement Class Members may submit a Claim for all three benefits.

Finally, but no less importantly, AFR has agreed as part of the settlement to delete the PII of any Settlement Class Member in its system to the extent allowable under all applicable state and federal laws or regulations, and to, within 90 days of the settlement's Effective Date, certify via affidavit or sworn declaration from an AFR employee with the ability to legally bind AFR that it has deleted and/or made non-accessible such PII of Settlement Class Members to the extent allowable under state and/or federal laws or regulations.

**C. Scope of the Release**

Plaintiffs and Settlement Class Members who do not opt-out of the settlement agree to release AFR and its Related Entities from all claims arising out of or relating to the Incident. *Id.*, ¶1.26. Defendant AFR agrees to release Plaintiffs, Settlement Class Members, and Co-Lead Counsel from claims based on or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation. *Id.*, ¶7.2.

**D. The Notice and Administration Plans**

The Parties have agreed to provide notification to Settlement Class Members in the forms attached as Exhibits B and C to the Settlement Agreement. *Id.*, ¶10.1. Dissemination of the settlement notice shall be the responsibility of the Settlement Administrator, Epiq Global, which shall provide notice both directly to Settlement Class Members and online at the dedicated

Settlement Website where Settlement Class Members obtain important settlement information. *See id.* The Notice and Settlement Administration Costs shall be borne by AFR and will not reduce any of the settlement benefits to Settlement Class Members. *Id.*, ¶3.1.

### E. Attorneys' Fees and Expenses

Plaintiffs will request an award of attorneys' fees of up to 33% of the $2,500,000 Common Fund, and expenses in an amount not to exceed $125,000, plus accrued interest thereon. Any attorneys' fees, expenses, and service awards to Plaintiffs will be paid from the Common Fund. Co-Lead Counsel will file a separate application for an award of attorneys' fees and expenses ahead of the Final Fairness Hearing. Settlement Class Members will have an opportunity to review that application and submit any objections they have before the hearing.

## III. LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for any compromise of claims brought on a class basis. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). It is well established in this Circuit that the settlement of class action litigation is both favored and encouraged. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.'"); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *Curiale v. Lenox Grp., Inc.*, 2008 WL 4899474, at *5 (E.D. Pa. Nov. 14, 2008) ("'The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be

conserved by avoiding formal litigation.'");[1] *In re CIGNA Corp.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("Settlement of complex class action litigation conserves valuable judicial resources, avoids the expense of formal litigation, and resolves disputes that otherwise could linger for years.").

The *Manual for Complex Litigation* describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation*, §21.63 (4th ed. 2004). At this juncture, Plaintiffs request that the Court take the first and second steps in the settlement approval process by entering the proposed Preliminary Approval Order and ordering the dissemination of notice to the Settlement Class.

Under Rule 23(e), preliminary approval should be granted if the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see also Jones v. Com. Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007) ("Courts make a preliminary evaluation of the fairness of the settlement, prior to directing that notice be given to members of the settlement class."). Rule 23(e)(2) provides:

> (2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

---

[1] Citations are omitted and emphasis is added throughout unless otherwise indicated.

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). These factors overlap with those set forth by the Third Circuit in *Girsh*, which include:

> "(1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . . ."[2]

521 F.2d at 157. The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'" *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5.

These factors warrant preliminary approval here.

## IV. ARGUMENT

### A. Preliminary Approval of Settlement Is Appropriate

The first two factors under Rule 23(e)(2) are the adequacy of representation for the class and the arm's-length nature of the settlement negotiations. *See* Fed. R. Civ. P. 23(e)(2)(A)-(B). These two factors overlap with the third *Girsh* factor, which focuses on the stage of the proceedings and the amount of discovery completed. *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 102 (D.N.J. 2012) (Courts have held that "a presumption of fairness exists where a settlement has been

---

[2] The *Girsh* factors "'are a guide and the absence of one or more does not automatically render the settlement unfair.'" *In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *5 (D.N.J. Mar. 26, 2010).

negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors.").

### 1. Plaintiffs and Plaintiffs' Interim Class Counsel[3] Have Adequately Represented the Settlement Class

Plaintiffs and their counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently and zealously prosecuting this Litigation on behalf of the proposed Settlement Class, including, *inter alia*, by drafting detailed complaints, successfully opposing Defendant's two motions to dismiss, engaging in extensive document discovery of defendant AFR and numerous third parties, and engaging in extensive settlement negotiations, including thorough pre-mediation briefing and extensive argument in connection with two mediations with separate mediators. *See In re Vivopharma Inc. Sec. Litig.*, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (approving settlement after arm's-length negotiation overseen by Phillips ADR Enterprises after the parties "had fully briefed the main issues in the case and conducted merits-based . . . discovery").

Further, Co-Lead Counsel have successfully prosecuted a number of class actions in the Third Circuit. *See, e.g.*, *In re Mercedes-Benz Emissions Litig.*, No. 16-cv-881 (D.N.J.) (Hon. Kevin McNulty) (James Cecchi appointed as Interim Co-Lead Counsel for plaintiffs and the proposed class in a case arising out of the alleged use of a defeat device to evade U.S. emissions regulations; settlement with value in excess of $700,000,000 granted final approval); *In re Vytorin/Zetia Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 08-0285 (D.N.J.) (Hon. Dennis M. Cavanaugh) (James Cecchi Co-Lead Counsel for class in case arising out of the marketing of drug Vytorin; settlement of

---

[3] On June 10, 2022, this Court appointed James E. Cecchi of Carella, Byrne, Cecchi, Brody & Agnello, P.C. ("Carella Byrne") and Stuart A. Davidson of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Plaintiffs' Interim Co-Lead Class Counsel ("Co-Lead Counsel"), and Melissa R. Emert of Kantrowitz, Goldhamer & Graifman, P.C., Gary Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC, Terence R. Coates of Markovits, Stock & DeMarco, LLC, and Joseph M. Lyon of The Lyon Firm, LLC as "Interim Class Counsel." ECF 13.

$41,500,000 secured for consumer class); *In re: Liquid Aluminum Sulfate Antitrust Litig.*, No. 2:16-md-02687 (D.N.J.) (Hon. Jose L. Linares) (Direct purchaser Antitrust case on behalf of municipalities and paper mills regarding price fixing claims arising from the sale of chemicals used in water treatment and paper production; James Cecchi appointed as Lead Counsel and secured settlements greater than $100,000,000); *Pelletier v. Endo Int'l., PLC, et al.*, No. 17-cv-5114, ECF 415 at 6 (E.D. Pa. Mar. 25, 2022) (finding that Robbins Geller and co-counsel "worked vigorously and successfully in bringing this case to a close for the benefit of the class, in a very short period of time" and that "quality and performance of results will be handsomely rewarded"); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, 2019 WL 4877563, at *3 (D.N.J. Oct. 3, 2019) (noting that Robbins Geller is "capable of adequately representing the class, both based on their prior experience in class action lawsuits and based on their capable advocacy on behalf of the class in this action"); *Schwartz v. Urb. Outfitters, Inc.*, 2016 WL 7626720, at *3 n.8 (E.D. Pa. Oct. 31, 2016) (stating that Robbins Geller "possess[es] substantial experience prosecuting securities class actions"); *In re AT&T Corp. Sec. Litig.*, 2005 WL 6716404, at *9 (D.N.J. Apr. 25, 2005) ("Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during [this] litigation substantiates this characterization."). The collective tenacity of Plaintiffs and Interim Class Counsel resulted in a very favorable settlement with a substantial financial benefit to the Settlement Class.

**2. The Proposed Settlement Was Negotiated at Arm's Length**

Rule 23(e)(2)(B) looks at whether the settlement was negotiated at arm's length. As discussed above in §II.A., the first mediation took place in February 2023 and negotiations continued throughout the litigation, culminating in a second mediation session a year later in February 2024. These negotiations were held with each side having full knowledge of the crucial issues in the case

and the benefit of significant document discovery, and they involved numerous phone calls and e-mails between counsel in addition to the two mediation sessions. As both mediators can attest, these negotiations were difficult, adversarial, and vigorously executed by both sides, and Defendant is represented by highly sophisticated counsel.

In addition, the direct participation of an experienced mediator further ensures that the negotiations were non-collusive and conducted properly. *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.'"); *Sanders v. CJS Sols. Grp., LLC*, 2018 WL 1116017, at *2 (S.D.N.Y. Feb. 28, 2018) ("[T]he settlement was negotiated for at arm's length with the assistance of an independent mediator, which reinforces the non-collusive nature of the settlement.").

Arm's-length negotiations conducted by competent counsel constitute *prima facie* evidence of fair settlements. In this case, the settlement was the result of intensive, arm's-length negotiations over the course of several months between experienced attorneys with vast experience handling data breach class action cases and with the assistance of two experienced mediators. Cecchi Decl., ¶¶10-11. There is no evidence that any collusion or illegality existed during settlement negotiations. The Parties' counsel support the settlement as fair and reasonable, and all certify that it was reached at arm's length.

#### 3. The Relief Provided for the Settlement Class Is Adequate Taking into Account the Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i), which overlaps *Girsh* factors 1 and 4-9, instructs the Court to consider the adequacy of the settlement relief in light of the costs, risks, and delay that trial and appeal could

inevitably impose.[4] *Compare* Fed. R. Civ. P. 23(e)(2)(C)(i), *with Girsh*, 521 F.2d at 157 (factor one focuses on the complexity, expense, and likely duration of the litigation; factors four through nine focus on risks). These factors weigh in favor of approval of the settlement.

Although Plaintiffs believe that the claims asserted in the Litigation are meritorious and the Settlement Class would ultimately prevail at trial, continued litigation against defendant AFR poses significant risks that make any recovery for the Settlement Class uncertain. The settlement's fairness is underscored by consideration of the obstacles that the Settlement Class would face in ultimately succeeding on the merits, as well as the expense and likely duration of the Litigation. Without any of the risks involved with further litigation, the Settlement Agreement provides Settlement Class Members with the opportunity to claim significant settlement benefits and be assured that, unless obligated to under law or regulation, Settlement Class Members' PII will be deleted by AFR upon the settlement's final approval. Moreover, there are no grounds to doubt the fairness of the settlement or other obvious deficiencies, such as unduly preferential treatment of Plaintiffs or excessive attorney compensation. Plaintiffs, like all Settlement Class Members, will receive benefits consistent with the Settlement Agreement. As disclosed in the Short Form and Long Form Notices, Plaintiffs will seek payment of service awards for their work in representing the Settlement Class. The benefits of settlement clearly outweigh the risks of continued litigation, including trial and appeals, given the substantial relief that Settlement Class Members will be afforded.

Further, continued litigation would be lengthy and expensive. Data breach litigation is often difficult and complex. A settlement is beneficial to all parties, including the Court. *See Woodward v. NOR–AM Chem. Co.*, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) ("Complex litigation

---

4 The second *Girsh* factor, the reaction of the class to the settlement, does not yet apply, and will be addressed at the final approval stage after the Settlement Class Members have been given notice of the settlement and have had an opportunity to be heard.

. . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'") (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)).

The fourth *Girsh* factor examines "the risks of establishing liability." *Girsh*, 521 F.2d at 157. Under this factor, "'[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them.'" *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 103 (D.N.J. 2018) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 814 (3d Cir. 1995) ("*GMC Truck*")). In considering this factor, the Court has recognized that "[a] trial on the merits always entails considerable risk[s]." *Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *4 (D.N.J. June 20, 2013) (citing *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995)). And "no matter how confident one may be of the outcome of [the] litigation, such confidence is often misplaced." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 343 (E.D. Pa. 2007). Although Co-Lead Counsel believe the claims presented in the Litigation are meritorious, they are experienced counsel who understand "the risks surrounding a trial on the merits are always considerable." *Weiss*, 899 F. Supp. at 1301. AFR has defended itself at every step of the Litigation and would certainly continue to press forward with its defenses through trial. The settlement provides certainty to the Settlement Class and substantial relief now.

Similarly, the fifth *Girsh* factor "'attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *In re Cendant Corp. Litig.*, 264 F.3d 201, 238 (3d Cir. 2001) (quoting *GMC Truck*, 55 F.3d at 816). The Court looks at the potential damage award if the case were taken to trial against the benefits of immediate settlement. *In re Prudential Ins. Co.*

*Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998). In *Warfarin Sodium*, the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002), *aff'd*, 391 F.3d 516, 537 (3d Cir. 2004). Here, in a complex data breach action like this one, there is no doubt such a battle of experts would occur.

In sum, taking into account that the case has been litigated for over two years, the risks and uncertainties of continued litigation, and the significant amount of the recovery, the settlement here is certainly reasonable and should be preliminarily approved. *See Girsh*, 521 F.2d at 157. Indeed, given the complexity of the case, the sophistication of Defendant and its counsel, and the uncertain risks and delay inherent in continuing the Litigation, the recovery here is outstanding.

Accordingly, the Court should find that the proposed settlement is fair, reasonable, and adequately protects the interests of the Settlement Class Members.

#### 4. The Other Rule 23(e)(2)(C) Factors Are Met

Rule 23(e)(2)(C) also lists three additional factors that a court considers in approving a settlement: (1) the effectiveness of the proposed method for distributing relief; (2) the terms of the proposed attorneys' fees; and (3) the existence of any other "agreement[s]." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). These factors are readily met.

##### a. The Proposed Method for Distributing Relief Is Effective

As demonstrated below and in the Azari Declaration, the method and effectiveness of the proposed notice and claims administration process (Rule 23(e)(2)(C)(ii)) are more than sufficient. The notice plan includes direct email and mail notice to all those who can be identified with

reasonable effort. *See* Azari Decl., ¶¶11-16. In addition, a toll-free hotline and a settlement-specific website will be created. Key documents will be posted on the website, including the Settlement Agreement, Long Form Notice, Claim Form, and Preliminary Approval Order. *See id.*, ¶¶17-18.

The claims process is also effective and includes a standard Claim Form which requests the information necessary to determine a claimant's claim amount.

**b. Attorneys' Fees and Expenses**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The Settlement Agreement provides that Co-Lead Counsel will apply for an award of attorneys' fees and expenses 35 days prior to the Final Fairness Hearing. As set forth in the proposed Long Form and Short Form Notices, Co-Lead Counsel will request attorneys' fees not to exceed 33% of the Common Fund and litigation expenses in an amount not to exceed $125,000, plus accrued interest thereon.[5]

**c. The Parties Have No Other Substantive Agreements**

Rule 23(e)(2)(C)(iv) calls for the disclosure of any other agreements entered into in connection with the settlement of a class action. The Settling Parties have entered into a confidential agreement as to the number of exclusions that will be allowed without terminating the Settlement Agreement. This confidential agreement is available at the Court's request and is contemplated by the Settlement Agreement. *See id.*, ¶11.3. There are no other agreements.

**5. Settlement Class Members Are Treated Equitably**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Here, the Settlement Agreement is fair, reasonable, and adequate

[5] Any fees and expenses awarded shall be paid from the Common Fund within five calendar days of Defendant AFR's funding of the Escrow Account.

because it treats all Settlement Class Members equitably and does not treat Plaintiffs or any other Settlement Class Member preferentially. An automatic *pro rata* payment will be made to all Settlement Class Members who submit a timely and Valid Claim.

### B. The Proposed Notice Program Satisfies Rule 23 and Due Process Should Be Approved

Under Rule 23(e), the Court should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). Notice of a proposed settlement must be the "best notice . . . practicable." Fed. R. Civ. P. 23(c)(2)(B). "'[B]est notice practicable'" means "'individual notice to all members who can be identified through reasonable effort.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The best practicable notice is that which "is . . . reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The notice plan set forth in the Settlement Agreement provides the best notice practicable under the circumstances. The Short Form and Long Form Notices were negotiated by the Parties and will be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort from Defendant's records, and through databases tracking nationwide addresses and address changes. In addition, Epiq Global will administer the Settlement Website containing relevant information about the settlement. Azari Decl., ¶17.

Moreover, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed notice plan satisfies the requirements of Rule 23(h)(1), as it notifies Settlement Class Members that Co-Lead Counsel will apply to the Court for

an award of attorneys' fees of no more than 33% of the $2,500,000 Common Fund, plus litigation expenses up to $125,000, plus accrued interest thereon. The notice plan complies with Federal Rule of Civil Procedure 23 and due process because, among other things, it informs Settlement Class Members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class, the claims asserted, and the benefits offered; (3) the binding effect of a judgment if the Settlement Class Member does not request exclusion; (4) the process for submitting objections and exclusions, including the time and method for objecting or requesting exclusion and that Settlement Class Members may make an appearance through counsel; (5) information regarding Co-Lead Counsel's request for awards of fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the notice plan and Short Form and Long Form Notices are designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the action, and gives them an opportunity to object or exclude themselves from the settlement. *See Agnone v. Camden Cnty., Ga.*, 2019 WL 1368634, at *9 (S.D. Ga. Mar. 26, 2019) (class notice mailed directly to settlement class members was the best practicable and satisfied due process). Thus, the notice plan should be approved. Fed. R. Civ. P. 23(c)(2)(A).

### C. Certification of the Settlement Class Is Appropriate

The Supreme Court has recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To certify a class, Plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). The four requirements of Rule 23(a) are numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Plaintiffs seek certification under Rule 23(b)(3), which requires a showing that common questions of law or fact

predominate over any individual issues and a showing that the class treatment is the superior method for efficiently handling the case. Fed. R. Civ. P. 23(b)(3). These requirements are met for settlement purposes.

**1. Numerosity**

Numerosity requires "the class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Third Circuit holds that class sizes exceeding 40 are typically sufficient to satisfy this requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Under Third Circuit precedent, Plaintiffs "must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding. Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." *Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 896 (3d Cir. 2022). Here, the Settlement Class definition encompasses approximately 216,645 Settlement Class Members, the joinder of whom in one action would certainly be impracticable. Thus, the numerosity element is satisfied.

**2. Commonality**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality is met where "the claims at issue . . . implicate[d] a 'uniform course of conduct common to all class members subject to common proof in a single trial.'" *C.P. v. N.J. Dep't of Educ.*, 2022 WL 3572815, at *6 (D.N.J. Aug. 19, 2022) (quoting *Chiang v. Veneman*, 385 F.3d 256,

266 (3d Cir. 2004)). "That burden is not onerous." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 380 (3d Cir. 2013).

Here, the claims turn on whether Defendant's security environment was adequate to protect Settlement Class Members' PII. Resolution of that inquiry revolves around evidence that does not vary from Settlement Class Member to Settlement Class Member, and so can be fairly resolved – at least for purposes of settlement – for all Settlement Class Members at once.

**3. Typicality**

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. This analysis focuses on "whether the interests of the named plaintiffs align with those of the unnamed members . . . and, explicitly, whether the claims and facts of class representatives are sufficiently like those of unnamed class members." *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.*, 2023 WL 1818922, at *9 (D.N.J. Feb. 8, 2023). Plaintiffs establish typicality when "the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues." *Arbitrage Fund v. Toronto-Dominion Bank*, 2023 WL 5550198, at *4 (D.N.J. Aug. 29, 2023). However, a class representative's claims need not be identical to those of the absent class members as "fact differences alone between the named and unnamed plaintiffs do not render a claim atypical so long as the named plaintiffs' claim arises from the same events, practices, or course of conduct of the defendants as for all class members, and is based upon the same legal theory." *Valsartan*, 2023 WL 1818922, at *9. Here, there is a nexus between the Plaintiffs' claims and other Settlement Class Members' claims in that they each include the same PII that was impacted in the Incident. All

Settlement Class Members' claims involve Defendant's alleged failure to protect their sensitive personal information.

**4. Adequacy of Representation**

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "'The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *In re Suboxone (Buprenorphine Hydrochlorine & Naloxone) Antitrust Litig.*, 967 F.3d 264, 272 (3d Cir. 2020). "For a class representative to be adequate, it must have 'a minimal degree of knowledge' about the case, . . . and have no conflict of interest with class counsel, . . . and members of the class." *Id.* "Only 'fundamental' conflicts 'will defeat the adequacy requirement.'" *Id.* Here, Plaintiffs have no conflicts with the Settlement Class and have actively participated in this case despite not receiving any special treatment. *See generally* Settlement Agreement. Plaintiffs have also adequately prosecuted this action through Interim Class Counsel, which is comprised of attorneys with significant experience litigating class and other complex cases, especially in the data privacy context. *See* Cecchi Decl., Exs. A-B.

**5. Certification Under Rule 23(b)(3) Is Appropriate**

Plaintiffs seek to certify a Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. Rule 23(b)(3) requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). Put another way, "the focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011). When assessing predominance and superiority,

the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial.").

**a. Common Questions of Law and Fact Predominate**

In this case, the common factual and legal questions all cut to the issues at the heart of the Litigation. This case is no different from *Desue v. 20/20 Eye Care Network, Inc.*, in which the Southern District of Florida held that in a similar data breach case,

> Rule 23(b)(3)'s predominance requirement is satisfied because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. As an example, each Class Member's claims are based on the alleged failure of the Defendants to appropriately maintain the confidentiality of their PII, which they allege was caused by the same actions and inactions of Defendants. Other key, common factual and legal questions predominate in this matter, including whether Defendants' data systems and security policies and practices were adequate and reasonable; the extent of Defendants' knowledge regarding any potential vulnerabilities in its data systems; and whether Plaintiffs and the Class Members suffered losses because of Defendants' actions.

2022 WL 17477004, at *5 (S.D. Fla. Dec. 5, 2022). Indeed, the answers to the key questions in this case are not tangential or theoretical such that the litigation will not be advanced by certification. Rather, they go to the core of the controversy, and the answers will be the same for each Settlement Class Member in that their PII was impacted in the Incident. Common factual and legal questions predominate based on AFR's alleged failure to safeguard all Settlement Class Members' PII from unauthorized access during the Incident. As such, because the class-wide determination of this issue will be the same for everyone and will determine whether any class member has a right of recovery, the predominance requirement is readily satisfied for purposes of this settlement.

**b. Settlement Class Treatment Is Superior**

The second prong of Rule 23(b)(3) – that a class action is superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied for the purpose of this settlement. *See* Fed. R. Civ. P. 23(b)(3); *see also Prudential*, 148 F.3d at 316. To determine superiority, the Court should consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in [a] particular forum; and, (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Courts also consider whether "'a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decisions as to persons similarly situated.'" *Amchem*, 521 U.S. at 615.

Here, Settlement Class Members do not have a strong interest in controlling the prosecution of this case. After all, it would cost them substantially more to litigate an individual case than they could recover in damages. As other data breach courts have recognized, this case "'is the classic negative value case; if class certification is denied, class members will likely be precluded from bringing their claims individually because the cost to bring the claim outweighs the potential payout.'" *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 165 (D. Md. 2022), *rev'd on other grounds*, *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023). "'For most class members the only realistic alternative to a class action is no action at all.' In such a case, 'the adjudication of the matter through a class action is superior to no adjudication of the matter at all.'" *Id.* Further, there are no other pending cases outside this Court for the conduct alleged. Third, common sense dictates that "the difficulties that would necessarily be presented by thousands upon thousands of individual actions far outweigh any difficulties the Court may encounter in managing a class action in this case." *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 162

(D.S.C. 2018). Finally, manageability concerns are not implicated in settlement class certification. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . ."). Superiority is met. Thus, the Court may certify the Settlement Class for settlement under Rule 23(b)(3).

### 6. The Settlement Class Members Are Ascertainable

Although not explicitly set forth in the Federal Rules of Civil Procedure, courts have read into Rule 23 an implicit requirement that a class be "definite" or "ascertainable." A proper class definition is necessary to ensure clarity as to who is entitled to relief, who is bound by a final judgment, and who is entitled to the "best notice practicable" in a Rule 23(b)(3) action. *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 175 (3d Cir. 2015); *Manual for Complex Litigation* §21.222; 5 James W. Moore, *et al.*, *Moore's Federal Practice* 23.21[3][d] (3d ed. 2013). "For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." 5 James W. Moore, *et al.*, *Moore's Federal Practice*, 23.21[3] (3d ed. 1997)*; see also Byrd*, 784 F.3d at 164.

Through several cases, the Third Circuit has clarified what is required to establish ascertainability. Building upon the Third Circuit's previous decisions in *Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013), and *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012), the Third Circuit has explained that ascertainability requires: 1) that the class members be identifiable by objective criteria; and 2) that "'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd*, 784 F.3d at 163 (citing *Marcus*, 687 F.3d at 593-94). "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must . . . identify all class members at class

certification. . . . " *Id.* Nor must plaintiffs "demonstrate that a single record, or set of records, conclusively establishes class membership." *City Select Auto Sales Inc. v. BMW Bank of N. Am., Inc.*, 867 F.3d 434, 441 (3d Cir. 2017). Rather, at this stage of the litigation, a plaintiff need only show that "'class members ***can*** be identified.'" *Byrd*, 784 F.3d at 163 (quoting *Carrera*, 727 F.3d at 308 n.2) (emphasis in original). The Settlement Class proposed here meets all relevant ascertainability criteria.

#### a. The Settlement Class Is Defined with Reference to Objective Criteria

"Many courts and commentators have recognized that an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 592 (citing *Chiang*, 385 F.3d at 271 (holding that "defining a class by reference to those who 'believe' they were discriminated against undermines the validity of the class by introducing a subjective criterion into what should be an objective evaluation")). Such is the case here.

The Settlement Class includes "all persons whose [PII] was maintained on AFR's system that was allegedly accessed during the Incident in December 2021, and who were sent a notice of the Incident in or around March 2022." None of these components requires the Court to rely on impermissible subjective standards, potential Settlement Class Members' beliefs, or a resolution of the merits of the claims. *Cf. Manual for Complex Litigation* §21.222 (indicating in its discussion of ascertainability that "order defining the class should avoid subjective standards (*e.g.*, a plaintiff's state of mind) or terms that depend on resolution of the merits (*e.g.*, persons who were discriminated against")). Instead, these criteria provide a clean and straightforward way to identify "'a particular group [that] was harmed during a particular time frame, in a particular location, in a particular way,'" in accordance with law from this Circuit. *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F.

Supp. 3d 812, 841 (D.N.J. 2018). Indeed, the Settlement Class is already identified by Defendant's own records of who was provided notice of being affected by the Incident. Thus, the first criterion of the Third Circuit's ascertainability analysis is met.

**b. There Is a Reliable and Administratively Feasible Mechanism for Determining Settlement Class Membership**

Second, the Court must be satisfied that there is a "reliable, administratively feasible" method to identify the Settlement Class Members. The Third Circuit addressed this requirement in *Byrd*, where it stated: "We were careful to specify in *Carrera* that '[a]lthough some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the certification stage, ascertainability only requires the plaintiff to show that class members ***can be identified***.'" *Byrd*, 784 F.3d at 164 (quoting *Carrera*, 727 F.3d at 308 n.2) (emphasis in original). In other words, there must be evidence that it can be done. *Id.*

Plaintiffs have submitted as evidence the Azari Declaration, the firm proposed to act as the Settlement Administrator should the Court approve the settlement. As reflected in the Azari Declaration, it is incumbent on a settlement administrator to determine if a claimant is a class member; otherwise, they are not entitled to a recovery. Azari Decl., ¶¶9-10. To do so, the Settlement Administrator will use the list provided by Defendant of who was provided notice of being affected by the Incident. *Id.*, ¶11. If they did, they are in the class – so long as they do not fit one of the objective class exclusions. The Claim Form is designed to help the Settlement Administrator determine eligibility cross-checking claims identifiers with claimant names. And if a claimant is unable to prove class membership or is excluded from the class, their claim is rejected.

A strong indicator of the reliability and feasibility of this methodology is the fact that, as stated in the Azari Declaration, the exercise is performed all the time in the settlement context. *See,*

*e.g.*, *id.*, ¶¶4-5. That there may be some degree of inquiry involved does not preclude a finding of ascertainability. *See Byrd*, 784 F.3d at 170 (noting "[t]here will always be some level of inquiry required to verify that a person is a member of a class"); *see also Kelly v. RealPage Inc.*, 47 F.4th 202, 223 (3d Cir. 2022) (matching records contained across multiple sources or databases does not make an "'otherwise objectively verifiable class'" unascertainable); *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 480 (3d Cir. 2020) (ascertainability satisfied by the prospect of cross-referencing a defendant's voluminous records with affidavits from putative class members); *City Select*, 867 F.3d at 442 (same). None of the foregoing cases proposed the simplicity of a routine claims process as the method for ascertaining the class, as Plaintiffs do here, yet ascertainability was found satisfied in each instance. The requirement is satisfied here as well.

Accordingly, the Settlement Class should be certified for settlement purposes.

**7. Proposed Co-Lead Counsel Satisfy Rule 23(g)**

Pursuant to Rule 23(g), Plaintiffs move to appoint Carella, Byrne, Cecchi, Brody & Agnello, P.C. and Robbins Geller Rudman & Dowd LLP as Co-Lead Counsel. Plaintiffs also move to appoint Co-Lead Counsel and Interim Class Counsel as Class Counsel. Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. Fed. R. Civ. P. 23. Although a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interests of the class," Rule 23(g)(1)(A) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g). Here, each of these considerations weighs strongly in favor of the adequacy of proposed Co-Lead Counsel. Proposed Co-Lead Counsel performed substantial work identifying and investigating potential claims and properly supporting the allegations in the Complaints, as shown by the fact that this Court ultimately denied, in large part, the Defendants' motions to dismiss, leading to the operative First Amended Consolidated Class Action Complaint. As part of their investigation and work, Co-Lead Counsel retained and consulted with multiple experts in different fields, and carefully reviewed public materials along with documents and information produced by Defendant in discovery. As reflected in their firm resumes, Plaintiffs' proposed Co-Lead Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation throughout the United States. *See* Cecchi Decl., Exs. A-B. Moreover, the firms have demonstrated their abilities and commitment to this Litigation, devoting the resources and personnel necessary to get to this point – achieving a substantial settlement with Defendant. They far exceed the requirements of Rule 23(g).

### D. The Court Should Approve a Schedule Leading Up to the Final Approval Hearing

Plaintiffs request that the Court set a schedule, leading up to the Final Fairness Hearing, that would include, *inter alia*, deadlines for notice to Settlement Class Members, for Settlement Class Members to object to the settlement, to opt out of the settlement, and to make claims under the settlement; and deadlines for the filing of papers in support of final approval, and in support of attorneys' fees and expenses.[6] At the Final Fairness Hearing, the Court should hear all evidence and argument necessary to make its final evaluation of the settlement. *See* Fed. R. Civ. P. 23(e)(2).

[6] A proposed timeline is attached to the Settlement Agreement as Exhibit D.

Proponents of the settlement may offer argument in support of final approval. Additionally, Settlement Class Members who properly object to the settlement may be heard at this hearing. The Court should determine through the Final Fairness Hearing whether the settlement will be approved.

## V. CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court enter an Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

DATED: May 22, 2024

Respectfully submitted,

CARELLA, BYRNE, CECCHI, BRODY & AGNELLO, P.C.
JAMES E. CECCHI
KEVIN G. COOPER

*s/ James E. Cecchi*
JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ 07068
Telephone: 973/994-1700
973/994-1744 (fax)
jcecchi@carellabyrne.com
kcooper@carellabyrne.com
botoole@carellabyrne.com

ROBBINS GELLER RUDMAN & DOWD LLP
STUART A. DAVIDSON
(admitted *pro hac vice*)
LINDSEY H. TAYLOR
ALEXANDER C. COHEN
(admitted *pro hac vice*)
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561/750-3000
561/750-3364 (fax)
sdavidson@rgrdlaw.com
ltaylor@rgrdlaw.com
acohen@rgrdlaw.com

Plaintiffs' Co-Lead Interim Class Counsel

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
GARY M. KLINGER
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: 866/252-0878
gklinger@milberg.com

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
DAVID K. LIETZ
5335 Wisconsin Avenue NW, Suite 440
Washington, DC 20015-2052
Telephone: 866/252-0878
202/686-2877 (fax)
dlietz@milberg.com

THE LYON FIRM, LLC
JOSEPH M. LYON
2754 Erie Avenue
Cincinnati, OH 45208
Telephone: 513/381-2333
513/721-1178 (fax)
jlyon@thelyonfirm.com

MARKOVITS, STOCK
& DEMARCO, LLC
TERENCE R. COATES
119 East Court Street, Suite 530
Cincinnati, OH 45202
Telephone: 513/651-3700
513/665-0219 (fax)
tcoates@msdlegal.com

KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.
GARY S. GRAIFMAN
MELISSA R. EMERT
135 Chestnut Ridge Road, Suite 200
Montvale, NJ 07645
Telephone: 845/356-2570
845/356-4335 (fax)
ggraifman@kgglaw.com
memert@kgglaw.com

Plaintiffs' Interim Class Counsel